## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IVAN HERNANDEZ, ROBERTO RODRIGUEZ, BILL JONES, GENE MICHNO, MARVIN BAILEY, RICHARD DAVIS, | |
| Plaintiffs, | |
| v. | Case No. 07 C 855 |
| COOK COUNTY SHERIFF'S OFFICE, MICHAEL F. SHEAHAN, in his individual capacity as Sheriff of Cook County, Illinois, TIMOTHY KAUFMANN, in his individual capacity, SCOTT KURTOVICH, in his individual capacity, DENNIS ANDREWS, in his individual capacity, THOMAS SNOOKS, in his individual capacity, the COUNTY OF COOK, a unit of local Government, | Honorable Ronald A. Guzman Magistrate Judge Morton Denlow |
| Defendants. | Jury Trial Demanded |

### FIRST AMENDED COMPLAINT

Plaintiffs, IVAN HERNANDEZ, ROBERTO RODRIGUEZ, BILL JONES, GENE MICHNO, MARVIN BAILEY, RICHARD DAVIS, complaining against Defendants, COOK COUNTY SHERIFF'S OFFICE, MICHAEL F. SHEAHAN, in his individual capacity as Sheriff of Cook County, Illinois, TIMOTHY KAUFMANN, in his individual capacity, SCOTT KURTOVICH, in his individual capacity, DENNIS ANDREWS, in his individual capacity, THOMAS SNOOKS, in his individual capacity, the COUNTY OF COOK, a unit of local Government, states as follows:

## INTRODUCTION

1.     Plaintiffs bring this action to redress acts of retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 in violation of Plaintiffs' free speech rights (Count I); of retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 in violation of Plaintiffs' rights to free political association (Count II); of retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983 (Count III – Monell Claim); of conspiracy to retaliate in violation of 42 U.S.C. § 1983 (Count IV); intentional infliction of emotional distress (Count V); and false imprisonment (Count VI).

2.     This Court has jurisdiction over Counts I, II, III, and IV pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1343 and over Counts V and VI pursuant to the Court's supplemental jurisdiction as codified in 28 U.S.C. §1367(a).

3.     Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because Plaintiffs and all Defendants either reside in this district or have their principal place of business in this district, and all events giving rise to Plaintiffs' claims occurred within this district.

## PARTIES

4.     Plaintiffs Ivan Hernandez, Roberto Rodriguez, Bill Jones, Gene Michno, Marvin Bailey, and Richard Davis are correctional officers with the Cook County Sheriff's Office.

5.     Plaintiffs were competitively selected and assigned to a highly specialized unit of the Cook County Sheriff's Office, the Special Operations Response Team ("SORT").

6. All Plaintiffs had an exemplary record with the Sheriff's Office and were selected to serve in the elite SORT Unit based on their record of superior job performance, which was above reproach.

### Sergeant Ivan Hernandez

7. Sergeant Ivan Hernandez began his employment with the Sheriff's Office on or about April 7, 1997.

8. Sergeant Hernandez was promoted to the rank of Sergeant in or about December 2001.

9. Sergeant Hernandez was selected and assigned to SORT in or about September 1999 through December 2001, in which he voluntary transferred out of the SORT Unit due to harassment.

10. At all relevant times, Plaintiff Hernandez satisfactorily fulfilled his assigned duties.

11. On or about February 13, 2006, Defendant Kaufmann ordered that Sergeant Hernandez be de-deputized and stripped of his duties as a police officer and suspended him with pay pending "a criminal investigation." This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

12. On or about February 23, 2006, Defendant Kurtovich ordered that Sergeant Hernandez be removed from the SORT Unit, essentially demoted, and reassigned to Division VI. Kurtovich issued said order at the direction and with the

knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

13.     Prior to the incidents alleged herein, Sergeant Hernandez had never received any disciplinary action during his almost ten (10) year tenure with the Sheriff's Office and was an exemplary officer and employee.

14.     Sergeant Hernandez is currently on disability leave as a result of Defendants' conduct as alleged herein.

<u>Sergeant Roberto Rodriguez</u>

15.     Sergeant Roberto Rodriguez began his employment with the Sheriff's Office in or about March 1993.

16.     Sergeant Rodriguez was selected and assigned to the SORT Unit in or about December 1996.

17.     Sergeant Rodriguez was promoted to the rank of Sergeant in or about December 2002.

18.     At all relevant times, Plaintiff Rodriguez satisfactorily fulfilled his assigned duties.

19.     In or about November 2006, Defendant Sheahan ordered that Sergeant Rodriguez be removed from the SORT Unit, essentially demoted, and reassigned to Division IX.

20.     Prior to the incidents alleged herein, Sergeant Rodriguez had never received any disciplinary action during his almost fourteen (14) year tenure with the Sheriff's Office and was an exemplary officer and employee.

4

<u>Officer Bill Jones</u>

21.     Officer Bill Jones was hired as a correctional officer on or about April 16, 1991.

22.     Officer Jones was selected and assigned to SORT in or about 1995.

23.     At all relevant times, Plaintiff Jones satisfactorily fulfilled his assigned duties.

24.     On or about February 13, 2006, Defendant Kaufmann ordered that Officer Jones be de-deputized and stripped of his duties as a police officer and suspended him with pay pending "a criminal investigation." This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

25.     On or about February 23, 2006, Defendant Kurtovich ordered that Officer Jones be removed from the SORT Unit, essentially demoted, and reassigned to Division VI. Kurtovich issued said order at the direction and with the knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

26.     Prior to the incidents alleged herein, Officer Jones had never received any disciplinary action during his over fifteen (15) year tenure with the Sheriff's Office and was an exemplary officer and employee.

27.     Officer Jones had received numerous commendations from the Sheriff's Office and others, recognizing his outstanding performance, including a letter of Commendation from Cook County Department of Corrections ("DOC") then Executive Director Ernesto Velasco on June 12, 1997, stating the following:

for outstanding performance and dedication. Your team concept, loyalty and commitment to Department of Corrections is exemplary and does not go unnoticed. Your professional attitude, leadership abilities, and unselfish contributions are achievements of professional distinction. Your accomplishment has been duly noted and recognized by the Executive Director's Office.

28.     Officer Jones was recognized for outstanding service as a Defensive Tactics instructor for SORT.

29.     As a result of Defendants' conduct as alleged herein, Officer Jones was no longer considered for the position of Cook County State's Attorney Investigator. Prior to the incidents alleged herein, Officer Jones had previously applied and been highly recommended by a judge and by a mayor, and others, for the position of Cook County State's Attorney Investigator.

<u>Officer Gene Michno</u>

30.     Officer Gene Michno was hired as a correctional officer in or about December 1999.

31.     Officer Michno was selected and assigned to SORT in or about June 2002.

32.     At all relevant times, Plaintiff Michno satisfactorily fulfilled his assigned duties.

33.     On or about February 13, 2006, Defendant Kaufmann ordered that Officer Michno be de-deputized and stripped of his duties as a police officer and suspended him with pay pending "a criminal investigation." This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

6

34.     On or about February 23, 2006, Defendant Kurtovich ordered that Officer Michno be removed from the SORT Unit, essentially demoted, and reassigned to Division V.  Kurtovich issued said order at the direction and with the knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

35.     Prior to the incidents alleged herein, Officer Michno had never received any disciplinary action during his over seven (7) year tenure with the Sheriff's Office and was an exemplary officer and employee.

36.     Officer Michno is currently on disability leave as a result of Defendants' conduct as alleged herein.

<u>Officer Marvin Bailey</u>

37.     Officer Marvin Bailey was hired as a correctional officer in or about September 1998.

38.     Officer Bailey was selected and assigned to SORT in or about June 2002.

39.     At all relevant times, Plaintiff Bailey satisfactorily fulfilled his assigned duties.

40.     On or about February 13, 2006, Defendant Kaufmann ordered that Officer Bailey be de-deputized and stripped of his duties as a police officer and suspended him with pay pending "a criminal investigation."  This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

7

41.     On or about February 23, 2006, Defendant Kurtovich ordered that Officer Bailey be removed from the SORT Unit, essentially demoted, and reassigned to Division V. Kurtovich issued said order at the direction and with the knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

42.     Prior to the incidents alleged herein, Officer Bailey had never received any disciplinary action during his over eight (8) year tenure with the Sheriff's Office and was an exemplary officer and employee.

43.     Officer Bailey is currently on disability leave as a result of Defendants' conduct as alleged herein.

### Officer Richard Davis

44.     Officer Richard Davis was hired as a correctional officer in or about June 1998.

45.     Officer Davis was selected and assigned to SORT in or about October 2002.

46.     At all relevant times, Plaintiff Davis satisfactorily fulfilled his assigned duties.

47.     On or about February 13, 2006, Defendant Kaufmann ordered that Officer Davis be de-deputized and stripped of his duties as a police officer and suspended him with pay pending "a criminal investigation." This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

48.    On or about February 23, 2006, Defendant Kurtovich ordered that Officer Davis be removed from the SORT Unit, essentially demoted, and reassigned to Division II. Kurtovich issued said order at the direction and with the knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

49.    Prior to the incidents alleged herein, Officer Davis had never received any disciplinary action during his over eight (8) year tenure with the Sheriff's Office and was an exemplary officer and employee.

Defendants

50.    Defendant COOK COUNTY is a municipality incorporated under the laws of the State of Illinois. Cook County administers itself through departments, one of which is the Cook County Sheriff's Office ("Sheriff's Office").

51.    At all relevant times, Defendant MICHAEL F. SHEAHAN ("Sheriff Sheahan") served in the elected position of Sheriff of Cook County, Illinois. Sheriff Sheahan is sued in his individual capacity as Sheriff of Cook County.

52.    Defendant Sheahan was a policy maker for the Sheriff's Office and has final policy making authority for the Sheriff's Office with regard to his acts and conduct alleged herein.

53.    Defendant TIMOTHY KAUFMANN is sued in his individual capacity. At all times relevant hereto, Defendant Kaufmann was the Director of Internal Affairs of the Cook County Sheriff's Office Department of Corrections and acted under color of law.

54.     Defendant Kaufmann was appointed by Sheriff Sheahan and served in the position of Director of Internal Affairs solely at the discretion and pleasure of the Sheriff.  Defendant Kaufmann as the Director of Internal Affairs is in charge of internal investigations within the Sheriff's Office.  Kaufmann is a final policy maker and decision maker for the Sheriff's Office with regard to his acts and conduct alleged herein.  The Sheriff delegated final policy making authority to Kaufmann with regard to his acts and conduct alleged herein.

55.     Defendant SCOTT KURTOVICH is sued in his individual capacity.  At all times relevant hereto, Defendant Kurtovich was the Assistant Executive Director of the Cook County Sheriff's Office Department of Corrections and acted under color of law.

56.     Defendant Kurtovich was appointed by Sheriff Sheahan and served in the position of Assistant Executive Director solely at the discretion and pleasure of the Sheriff.  Kurtovich is a final policy maker and decision maker for the Sheriff's Office with regard to his acts and conduct alleged herein.  The Sheriff delegated final policy making authority to Kurtovich with regard to his acts and conduct alleged herein.

57.     Defendant DENNIS ANDREWS is sued in his individual capacity.  At all relevant times, Defendant Andrews was the Director of External Operations of the Cook County Sheriff's Office Department of Corrections and acted under color of law.

58. Defendant Andrews was appointed by Sheriff Sheahan and served in the position of Director of External Operations solely at the discretion and pleasure of the Sheriff. Andrews is a final policy maker and decision maker for the Sheriff's Office with regard to his acts and conduct alleged herein. The Sheriff delegated final policy making authority to Andrews with regard to his acts and conduct alleged herein.

59. Defendant THOMAS SNOOKS is sued in his individual capacity. At all relevant times, Defendant Snooks held the rank of Superintendent of the Cook County Sheriff's Office Department of Corrections and acted under color of law.

## FACTS UPON WHICH CLAIMS ARE BASED

### Plaintiffs' Complaints of Officer and Public Safety

60. At all times relevant herein, Plaintiffs were assigned to guard the most dangerous inmates in the Abnormal Behavioral Observation Unit ("ABO") of the DOC. The ABO Unit housed the worst inmates; inmates that had repeated behavioral problems and had been charged with murder, rape, and other heinous crimes. These inmates were the most violent and most aggressive.

61. The ABO Unit was plagued with security and safety hazards to the officers and inmates stationed there.

62. Plaintiffs began reporting the safety concerns and complained about the lack of proper staffing and management supervision.

63.    Plaintiffs repeatedly complained to Defendant Kurtovich, Defendant Andrews, Defendant Kaufman, and other supervisors and managers of the Sheriff's Office, including Lieutenant Martiniak, Lieutenant Norwood, Captain Tylka, Chief Brown, Chief Turner, Superintendent Plaxico, and some even complained externally to the Office of Inspector General about the serious officer and public safety issues and about the abhorrent conditions of the jail.

64.    In the ABO Unit, the inmates were setting fires and floods on a daily basis, and were constantly pulling pins out of fire extinguishers, throwing urine and feces on the officers and committing acts of violence towards the officers and other inmates.

65.    Defendants refused to provide Plaintiffs and the ABO Unit with adequate staffing even in violation of the Sheriff's office own general orders requiring a supervisor to be assigned to every shift, setting the SORT officers up for failure and setting them up to be seriously injured or even killed in the line of duty.

66.    Defendants refused and failed to place a supervisor on the midnight shift in violation of their own General Orders in the ABO Unit, leaving Plaintiffs and other officers alone without supervisory support.  Such supervisory support is necessary and required per the General Orders to make time critical and officer safety related decisions and to authorize certain actions to be taken.

67.    Plaintiffs reported this conduct and requested that Defendants Sheahan, Andrews, Kurtovich, Snooks, and other supervisors remedy the situation and serious concerns for officer, inmate, and public safety.

68.     All of Plaintiffs written and verbal complaints fell on deaf ears.

69.     After another dangerous and life threatening incident that occurred in the ABO Unit because of the lack of staff, broken locks, and safety violations, Sergeant Rodriguez put in writing many of the complaints previously expressed by the other Plaintiffs, and Sergeant Hernandez, and complained that:

> If this type of treatment is accepted by administration, R/S feels that it's a matter of time before a fatality occurs. R/S also feels that the issue of the 10 p.m. to 6 a.m. shift not having any supervisors on the shift, for over a year, and the memorandum stating that Ex-Ops [External Operations] is to be responsible for 10 p.m. to 6 a.m. shift being disregarded played a factor leading to this embarrassing and life threatening incident.

70.     Sergeant Rodriguez went outside of his chain of command and attempted to complain to the Cook County Office of Inspector General.  When Sergeant Rodriguez met with Joseph Griffin, of the Office of Inspector General, Griffin stated that the complaints were sent back to the Sheriff's Office's Internal Affairs Department, despite the fact that this was the same Unit and Department that was refusing to take action and perpetuating the violations and putting the officers' lives at risk.  When Sergeant Rodriguez complained that he and the other officers were in fear for their lives, Griffin responded:  "it is what it is."

71.     The other Plaintiffs also went outside the chain of command and complained about the officer safety and security violations.

72.     Plaintiffs repeatedly complained and begged that the inmates be taken out of the ABO Tier and placed in a more secure area.  Defendants Director Andrews and Director Kurtovich refused, stating "It's not going to happen."

73.    All of Plaintiffs' complaints were matters of public concern in that they addressed officer, public, and inmate safety issues.

<u>Plaintiffs' Political and Perceived Political Activity</u>

74.    The SORT Unit was considered an elite unit that was at one point headed by Richard Remus, who held the position of Superintendent.

75.    In 2006, Remus put his name on the ballot to run for Sheriff of Cook County. The primary for the election was held on March 21, 2006.

76.    Prior to the primary, many SORT officers actively supported Remus's campaign for Sheriff. It was widely known throughout the Sheriff's office that SORT was "Remus's Unit" and many SORT officers were actively involved in his political campaign.

77.    Plaintiffs, along with many other officers, were feeling pressure from their supervisors and command staff of the Sheriff's Office to support Tom Dart, Sheahan's slated replacement.

78.    Defendants knew and believed that all Plaintiffs supported the political opponent (Remus) in the primary and did not support Dart.

79.    On or about January 26, 2006, Sergeant Hernandez drove into the parking lot to begin his regular tour of duty. Because Hernandez had been actively supporting Remus's campaign, he had political signs for Remus in the back of his vehicle. Immediately following Hernandez parking in the parking lot, Defendant Director Andrews telephoned Hernandez, screaming at him to get his "God damn car off the parking lot."

80.     Director Andrews or someone on his behalf, on information and belief, ran Sergeant Hernandez's license plates through the Sheriff's Office "Leads" system.

February 11-12, 2006 Jail Escape

81.     Defendants had only assigned two officers, Plaintiff Bailey and Officer Darren Gater, to work the midnight shift on February 11, 2006 in the ABO Unit.

82.     In order to provide for a third person, Officer Davis volunteered to work overtime.

83.     Even with three officers, the shift was short staffed with no supervisor.

84.     Due to the short staffing and the fires and floods set by the inmates, and the unsafe conditions in the jail, including broken locks and inadequate housing units, several inmates were able to escape from the DOC on February 11, 2006 just before midnight ("the escape").

85.     Officer Darren Gater, per orders of Director Andrews, had allowed an inmate to take a shower, Inmate Patrell Doss.  Doss locked himself in the shower with the shackles that were hanging on the cell doors to the shower, which was being used as a "lock" because the lock on the shower-cell-door was broken.  When Officer Gater went to unlock the shackle, Inmate Doss threw a chemical substance in Officer Gater's face, causing his eyes to burn and blinding him.  Inmate Doss also held a shank (a homemade knife) to Officer Gater's throat and threatened to kill him.

15

86.     Just prior to the escape, Defendant Director Andrews had ordered the SORT Officers in the ABO Unit to allow the inmates to take showers or use the phone during the midnight shift if the inmate requested it.

87.     Within minutes of the escape and before any investigation was conducted and before Officer Gater or anyone else was questioned, Defendant Chief Kaufmann appeared in the ABO Unit and was screaming over and over: "this smells of Remus," "this is a Remus set up," "you people are going to pay for this," "f_cking jail guards."

88.     Investigator, Miriam Rentas, was also present.   Rentas stated to Defendant Kaufmann, "You can't say that."  To which Defendant Kaufmann stated: "I don't give a f_ck."

89.     Defendant Sheahan assigned Defendant Kaufmann as the "Chief Investigator" in charge of the investigation of the escape.  Defendant Kaufmann was directly involved in the conspiracy to implicate Plaintiffs because of their prior complaints and because of their apparent political affiliation and support of Sheahan's opponent, and lack of support for Tom Dart.

90.     Defendant Director Andrews has told others that the implication of Plaintiffs in the escape was "political."

91.     Immediately following the escape, SORT Officers were paged to respond to the escape.

92.     Defendant Snooks was assigned as a supervisor in charge of the recovery attempts of the inmates that had escaped.  Defendant Snooks appeared on

the job drunk and was belligerent and placed the Officers' lives in danger. This was reported to Captain Tylka and up the chain of command.

93. The Sheriff's Office immediately initiated an "investigation," which was targeted at trying to obtain evidence to support Kaufmann's unsubstantiated statement that this was a "Remus setup" and targeted at retaliating against Plaintiffs.

94. Plaintiffs were held and detained by the Sheriff's Office and Cook County Sheriff's Police at the direction of Defendant Kaufmann, Sheahan and other Defendants. Some Plaintiffs were held and detained for over 8 hours, while others were held for over 24 hours. While they were detained, Plaintiffs were denied their right to counsel. Plaintiffs were also denied food, water, sleep, and a phone call. Plaintiffs were treated worse than common criminals.

95. Plaintiffs were held and questioned and made to believe that they were in custody and not free to leave.

96. Immediately following the escape, Defendants and investigators for Defendants attempted to coerce statements from Officers and inmates, attempting to falsely implicate Plaintiffs in the "escape plot."

97. Sheriff's Office investigators suggested to Plaintiff Michno that Officer Darryn Gater was dirty and that he was somehow involved in planning and orchestrating the escape. Sheriff's investigators suggested the same thing to Sergeant Rodriguez, and attempted to get Sergeant Rodriguez to implicate Officer Gater. While at the same time, these investigators were trying to get Officer Gater

to falsely implicate Plaintiffs, and get Plaintiffs to falsely implicate each other. Sheriff's investigators inquired about Plaintiffs' political affiliation and involvement in Remus's political campaign for Sheriff.

98.     During the Sheriff's "investigation," some of the inmates were immediately transferred to Division 9 under Defendant Snooks.

99.     Defendant Snooks repeatedly met with some of the inmates, telling them in effect, among the following:

a.     I need you to talk to the State's Attorney and tell them that the officers had something to do with the escape;"

b.     Snooks offered that he could get the inmate "less time" (meaning in jail);

c.     Snooks also stated that his brother-in-law was Mayor Daley and that he "could pull some strings at the State's Attorney's Office" for the inmate;

d.     Snooks stated that he and his brother-in-law (meaning Mayor Daley) "run this County and this City," and that he could either "help" or "hurt" the inmate, stating:   "I am a very powerful man."

e.     Snooks placed extra commissary pay on some of the inmates' accounts in an attempt to bribe them to implicate Plaintiffs as having been involved in the escape;

f.    Snooks stated to one inmate in effect: "you are going to be sorry that you did not talk to the State's Attorney," and "you could have avoided the pain and abuse that you have coming to you," and "that's a promise;"

g.    Because this inmate refused to lie and refused to tell the State's Attorney's Office that Plaintiffs were involved, this inmate was subjected to retaliation, including such things as officers spitting in his food; being placed in a holding cell for days on end without food or water; being threatened; being told that he was going to have his ass kicked; and being beaten.

h.    The very next day after the inmate was beaten about the head by a Sergeant and an officer, Snooks asked the inmate: "Are you ready to talk to the State's Attorney?" When the inmate replied, "No," Snooks stated that things were going to get worse. Snooks placed the inmate in a holding cell for three days with no reason given.

i.    When the inmate attempted to advise the judge in his criminal case of the wrong-doing, Snooks told him that he would have the officers kill him if he continued to try to advise the court of his misconduct and intimidation tactics.

100.  On or about February 13, 2006, the Monday following the escape, Defendant Kaufmann ordered that Plaintiffs Hernandez, Jones, Bailey, Michno,

and Davis, be de-deputized and stripped of their duties as police officers and suspended with pay pending "a criminal investigation." This was done with the knowledge, consent, acquiescence, and at the direction of Defendants Sheahan, Andrews, and Kurtovich.

101. On or about February 15, 2006, Plaintiff Sergeant Hernandez was ordered to appear at 31st and California. Sheriff's Investigators and the head of felony review for the Cook County State's Attorney's Office, Assistant State's Attorney Darrin O'Brien, read Sergeant Hernandez his Miranda rights, indicating that he was going to be charged criminally. Sergeant Hernandez asserted his right to counsel.

102. When Sergeant Hernandez's counsel appeared, ASA O'Brien demanded that Sergeant Hernandez answer questions, and when ASA O'Brien was advised that Sergeant Hernandez was not going to answer any questions, ASA O'Brien responded: "if you don't fucking talk to me. . . .," and then stopped and put his hand over his mouth.

103. After over an hour of being detained, Sergeant Hernandez was released.

104. It was clear from the statements that the Sheriff's Office, Sheahan, and others on Sheahan's behalf made to the press, and by the treatment of Officer Darren Gater, that the Sheriff's Office was maliciously attempting to set Sergeant Hernandez up on criminal charges and attempting to falsely implicate him in the escape.

105.    On or about February 23, 2006, Defendant Kurtovich ordered that Plaintiffs Hernandez, Jones, Davis, Bailey, and Michno be removed from the SORT Unit, essentially demoted, and reassigned to various Divisions of the DOC. Kurtovich issued said order at the direction and with the knowledge and consent and acquiescence of Defendants Sheahan, Kaufmann, and Andrews.

106.    Following the incidents leading up to the escape and the fall out, Sergeant Rodriguez was removed from SORT and reassigned to Division 9. Sergeant Rodriguez was reassigned to the midnight shift, under Superintendent Snooks, the same supervisor he had previously complained about, and the same supervisor that was directly involved in the campaign to try to implicate Plaintiffs in the escape.

107.    After being assigned under Defendant Snooks and placed in fear for his safety in light of his prior complaints, and in consideration of Snooks's conspiratorial conduct, Sergeant Rodriguez requested to change his detail. Defendant Andrews denied his request.

108.    Defendant Kurtovich has denied Officer Bailey and Officer Davis's requests for Family Medical Leave Act time.

109.    Within a month after the escape, in or about March or April 2006, Defendants accused Jones of ghost payrolling, *i.e.*, getting paid by Harvey and the Sheriff's Office for the same time periods. These allegations were ultimately not sustained.

110.     Defendants also accused Sergeant Rodriguez of ghost payrolling, while he was not officially charged with this accusation, it damages his reputation and caused him to further fear being set up on false accusations and caused him further emotional distress.

111.     Defendants have caused Plaintiffs Bailey and Davis to be brought before the Sheriff's Office on a Loudermill Hearing, in which the Sheriff's Office ultimately suspended Officers Bailey and Davis without pay pending charges before the Cook County Sheriff's Merit Board seeking their termination.

112.     Defendants caused Plaintiffs Davis and Bailey to have charges brought before the Cook County Sheriff's Merit Board seeking their termination, such charges are and were retaliatory in violation of the First Amendment based upon their political and perceived political affiliation.

113.     Defendants actions in seeking charges before the Cook County Sheriff's Merit Board seeking Officers Davis's and Bailey's termination are and were retaliatory in violation of the First Amendment based upon their protection speech, which was on matters of public concern.

114.     Defendant KAUFMANN, with the knowledge and consent and/or at the direction of the other Defendants, maliciously caused Plaintiffs to be investigated and implicated in the alleged wrong-doing and to be subject to criminal and administrative investigations.

115.     Defendant KAUFMANN along with the other Defendants have conducted other malicious and unwarranted investigations of officers based in

violation of their free speech and equal protection rights and in retaliation for them speaking out about matters of public concern.

116.   Defendants subjected Plaintiffs to a malicious and unwarranted criminal and administrative investigation and charges in retaliation for their complaints that were matters of public concern and in retaliation for their lack of support for Sheahan's slated candidate, Tom Dart.

117.   Plaintiffs were subjected to frivolous investigations and false charges for which there was no probable cause in violation of their free speech rights and in violation of the First Amendment.

118.   Defendants have engaged in a pattern and practice of retaliation against employees who have complained about matters of public concern.

119.   Defendants have engaged in a pattern and practice of retaliation against employees who have complained about matters of public concern.

120.   Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by subjecting Plaintiffs to frivolous and malicious criminal and internal investigations, false accusations, removing them from SORT, damaging their reputations, subjecting them to humiliation, causing them to fear for the safety, causing them to feel terrorized and humiliated, resulting in severe emotional distress.

121.   Defendants and Defendants' command staff and supervisors had knowledge of the complained of conduct and refused or failed to take action to

terminate or correct such conduct, although they had the power and authority to do so.

## COUNT I

### (§ 1983 – Political Retaliation

### v. All Defendants)

122.   Plaintiffs restate and reallege by reference paragraphs 1 through 121 as if fully set forth herein against all Defendants.

123.   At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Cook County Sheriff's Department and its respective agencies.

124.   The First Amendment protects a wide spectrum of free speech and association, including a public employee's right to free association and to support or not support a political candidate of their own choosing.

125.   By not supporting Sheahan's candidate of choice, Dart, and by being associate with and associating with others involved in Remus's campaign, a political opponent to Sheriff Sheahan and his political party and the Democratic machine, Plaintiffs were engaged in the exercise of their rights under the First Amendment.

126.   Defendants unlawfully retaliated against Plaintiffs for the exercise of their rights under the First Amendment.

127.   Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by subjecting Plaintiffs to frivolous and malicious criminal and internal

investigations, false accusations, removing them from SORT, damaging their reputations, subjecting them to humiliation, causing them to fear for the safety, causing them to feel terrorized and humiliated, resulting in severe emotional distress.

128.   Despite knowing that the investigation and allegations were baseless and motivated by Defendants' desire to retaliate against Plaintiffs for their protected First Amendment activities, Defendants acquiesced, agreed, and participated in the initiation of criminal charges and a criminal investigation, filing of charges before the Internal Affairs Division of the Sheriff's Office in violation of Plaintiffs' First Amendment rights, and against some Plaintiffs the filing of charges before the Cook County Sheriff's Merit Board.

129.   The actions of the Defendants against Plaintiffs violated their rights guaranteed under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

130.   All Defendants have acted under color of state law at all material times hereto.

131.   The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

132.   The false, malicious, and retaliatory acts of Defendants have resulted in extreme humiliation and embarrassment to Plaintiffs and have diminished their reputation in the community.

133.    The acts of Defendants have resulted have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiffs seeks the following relief as to Count I of the Complaint:

a.    All wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

b.    Compensatory damages in an amount to be determined at trial;

c.    A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

d.    A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment and non-retaliation of employees;

e.    A declaratory judgment that Defendants' actions violate the First Amendment to the United States Constitution;

f.    The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.    Punitive damages as allowed by law as against the individual Defendants only;

h.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.    Such other relief as the Court may deem just or equitable.

## COUNT II

## (1983 Retalation of First Amendment

## v. All Defendants)

134.   Plaintiffs restate and reallege by reference paragraphs 1 through 121 as if fully set forth herein against all Defendants.

135.   At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Cook County Sheriff's Department and its respective agencies.

136.   By Defendants' actions, Plaintiffs suffered compensable injury and harm as a result of the denial of rights guaranteed to them pursuant to the First Amendment to the United States Constitution.

137.   The conduct of Defendants violated Plaintiffs' right to free speech and free association as provided by the First Amendment to the Constitution.

138.   Defendants intentionally retaliated against Plaintiff with malice or reckless indifference to Plaintiff's civil rights, thereby entitling Plaintiff to punitive damages against the individual Defendants.

139.   The actions of the Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

140.    The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

**WHEREFORE,** Plaintiffs seek the following relief as to Count II of the Complaint:

a.    All wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

b.    Compensatory damages in an amount to be determined at trial;

c.    A permanent injunction enjoining the Defendants from engaging in the constitutional violations complained of herein;

d.    A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983;

e.    A declaratory judgment that Defendants' actions violate the First Amendment to the United States Constitution;

f.    The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.    Punitive damages as allowed by law as against the individual Defendants only;

h.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.    Such other relief as the Court may deem just or equitable.

## COUNT III

## (§ 1983 – Political Retaliation

## v. Defendant Cook County Sheriff's Office - *Monell* Claim)

141.     Plaintiffs restate and reallege by reference paragraphs 1 through 121 as if fully set forth herein against all Defendants.

142.     At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Cook County Sheriff's Department and its respective agencies.

143.     The First Amendment protects a wide spectrum of free speech and association, including a public employee's right to free association and to support or not support a political candidate of their own choosing.

144.     Defendants' actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning retaliation against individuals:

    a.     Because of their political and perceived political affiliation;

    b.     Because they have complained about matters of public concern and Defendants' unlawful conduct;

    c.     By intimidating and coercing inmates to falsely implicate correctional officers and employees for some unlawful purpose; and/or

    d.     In and condoning malicious and unwarranted investigation for retaliatory reasons.

145.    Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by subjecting Plaintiffs to frivolous and malicious criminal and internal investigations, false accusations, removing them from SORT, damaging their reputations, subjecting them to humiliation, causing them to fear for the safety, causing them to feel terrorized and humiliated, resulting in severe emotional distress.

146.    Despite knowing that the investigation and allegations were baseless and motivated by Defendants' desire to retaliate against Plaintiffs for their protected First Amendment activities, Defendants acquiesced, agreed, and participated in the filing of charges before the Internal Affairs Division of the Sheriff's Office in violation of Plaintiffs' First Amendment rights.

147.    The actions of the Defendants against Plaintiffs violated their rights guaranteed under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

148.    All Defendants have acted under color of state law at all material times hereto.

149.    The actions of the Defendants were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. § 1983 and the Civil Rights Act of 1991.

150.    The false, malicious, and retaliatory acts of Defendants have resulted in extreme humiliation and embarrassment to Plaintiffs and have diminished their reputation in the community.

151. The acts of Defendants have resulted have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE,** Plaintiffs seeks the following relief as to Count III of the Complaint:

a.   All wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

b.   Compensatory damages in an amount to be determined at trial;

c.   A permanent injunction enjoining the Defendant from engaging in the retaliatory practices complained of herein;

d.   A permanent injunction requiring that the Defendant adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendant adopt and initiate effective remedial actions to ensure equal treatment and non-retaliation of employees;

e.   A declaratory judgment that Defendant's actions violate the First Amendment to the United States Constitution;

f.   The Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.   An award of reasonable attorneys' fees, costs, and litigation expenses; and

h.   Such other relief as the Court may deem just or equitable.

## COUNT IV

## (§ 1983 Conspiracy

## v. All Defendants)

152.   Plaintiffs restate and reallege by reference paragraphs 1 through 121 as if fully set forth herein against all Defendants.

153.   The individual Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves and with other unnamed and/or unknown co-conspirators, to deprive Plaintiffs of their Constitutional rights, and did deprive them of their Constitutional rights, as alleged herein, including their right to be free from retaliation for exercising their right to free speech, as protected by the First Amendment and Equal Protection of the laws as guaranteed by the Fourteenth Amendment.

154.   In furtherance of this conspiracy, the individual Defendants committed overt acts as alleged herein, including but not limited to falsely and maliciously investigating Plaintiffs in direct retaliation for Plaintiffs protected First Amendment activities, and in violation of Plaintiffs First and Fourteenth Amendment rights.

155.   Said acts of Defendants were undertaken willfully and maliciously and deprived Plaintiffs of their rights under the First Amendment and 42 U.S.C. §1983.

156.    Said conspiracy proximately caused said Constitutional violations and other injuries, including but not limited to pain and suffering, mental anguish, legal expenses, loss of income, as alleged herein.

**WHEREFORE,** Plaintiffs seek the following relief as to Count IV of the Complaint:

a.    All wages and benefits Plaintiffs would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

b.    Compensatory damages in an amount to be determined at trial;

c.    A permanent injunction enjoining the Defendants from engaging in the constitutional violations complained of herein;

d.    A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983;

e.    A declaratory judgment that Defendants' actions violate the First Amendment to the United States Constitution;

f.    The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.    Punitive damages as allowed by law as against the individual Defendants only;

h.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.    Such other relief as the Court may deem just or equitable.

## COUNT V

## (Intentional Infliction of Emotional Distress

## v. All Defendants)

157.   Plaintiffs restate and reallege by reference paragraphs 1 through 121 as if fully set forth herein as against all Defendants.

158.   The intentional acts of Defendants constitute extreme and outrageous conduct, beyond the bounds of decency, which inflicted severe emotional distress and mental anguish on Plaintiffs.

159.   As a proximate result of Defendants' unlawful acts, Plaintiffs have suffered severe mental anxiety and emotional and physical distress.

160.   Defendants acted willfully and maliciously with respect to their treatment of Plaintiffs.

**WHEREFORE,** Plaintiffs seek the following relief as to Count V of the Complaint:

  a.   Economic losses Plaintiffs sustained and will sustain as a result of the intentional infliction of emotional distress, including prejudgment interest on such amounts;

  b.   Compensatory damages;

  c.   Punitive damages as allowed by law as against individual Defendants only;

  d.   An award of reasonable attorneys' fees, costs, and litigation expenses; and

  e.   Such additional relief as the Court deems equitable and proper.

## COUNT VI

## (False Imprisonment

## v. Defendants Sheriff's Office, Sheahan, Kaufmann and Kurtovich)

161.   Plaintiff restates and realleges by reference paragraphs 1 through 121 as if fully set forth herein as against all Defendants.

162.   Defendants restrained Plaintiffs without having reasonable grounds to believe that Plaintiffs committed an offense and without probable cause to restrain them.

163.   Defendants actions were unreasonable and without justification.

164.   Defendants acted willfully and maliciously with respect to their treatment of Plaintiffs.

165.   Defendants acted willfully and maliciously with respect to their treatment of Plaintiffs.

**WHEREFORE,** Plaintiffs seek the following relief as to Count VI of the Complaint:

      a.    Economic losses Plaintiffs sustained and will sustain as a result of the intentional infliction of emotional distress, including prejudgment interest on such amounts;

      b.    Compensatory damages;

      c.    Punitive damages as allowed by law as against individual Defendants only;

      d.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

      e.    Such additional relief as the Court deems equitable and proper.

Respectfully Submitted,

IVAN HERNANDEZ, ROBERTO
RODRIGUEZ, BILL JONES, GENE
MICHNO, MARVIN BAILEY, RICHARD
DAVIS

*s/ Dana L. Kurtz*

Plaintiff's Attorneys

*Electronically filed on October 25, 2007*

Dana L. Kurtz, Esq. (6256245)
KURTZ LAW OFFICES, LLC
414 South State Street
Lockport, Illinois 60441
Phone: 815.838.0968
Facsimile:   312.893.2239
E-mail:   dkurtz@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on this 25th of October 2007.

**Daniel Francis Gallagher**, dgallagher@querrey.com
**Terrence Franklin Guolee**, tguolee@querrey.com
**Daniel A. Kirk**, dkirk@querrey.com
**Lawrence S. Kowalczyk**, lkowalczyk@querrey.com
**Dominick L Lanzito**, dlanzito@querrey.com
**Mary Elizabeth McClellan**, mmcclellan@querrey.com
Querrey & Harrow, Ltd.
175 West Jackson Boulevard
Suite 1600
Chicago, IL 60604-2827
(312) 540-7000

*s/Dana L. Kurtz*

*Electronically filed on October 25, 2007*